All right, our second case for this morning is Benson v. Fannie May Confections Brands. So we'll get counsel for that case up to the tables. And we will hear first from Mr. Borms. Good morning. May it please the court, my name is James Bormas. I'm representing Clarisha Benson, Lorenzo Smith, and a putative class of Illinois consumers. Before the court today is the district court's dismissal of an amended complaint. And let me point out that the trial court didn't find that there cannot be a so-called slack fill case under Illinois law. The defendant is likewise arguing that no such cause of action exists. So the question is, did we in the amended complaint satisfy the pleading requirements under both Rule 8 and Rule 9? The first aspect is that there is a federal regulation that governs the packaging of food items. That's 21 CFR section 100.100. But of course there's no private right of action there. You're bringing a state claim under diversity jurisdiction. And the state claim is identical to what would be required under the CFR. So we're not in any way deviating or increasing our claims as to what... So what I need you to talk about, maybe my colleagues have other issues, is how in your of these boxes? Well... The slack fill, if you will. I can answer that in two ways, Your Honor. First of all, there's a 2006 opinion from this court, O'Shaughnessy v. Coca-Cola. And it talks about when you have unjust enrichment, one of the things you can look at is, is it appropriate for the defendant to enjoy the obtained through deception? But I want to know, maybe I'm being insufficiently specific. There are pictures of this. The box says it's a 7-ounce box. The box discloses the number of pieces of each of these two different kinds of candy, the mint melt-aways and the pixies. And somebody picking up a whole range. And there was candy in the box. And as far as I know, there's no allegation that the candy itself was spoiled or defective. What damage, when you open the box and you say, gee, this box is only half full, does one suffer? Well, what we've alleged is that we would not have made the purchase. What? There's two aspects towards the packaging of goods for consumption. There's a requirement that the weight has to be there. And there's also a requirement that there can't be slack fill. And if you go back to the CFR regulation, it says that if you're using slack fill for no functional purpose, that is misleading. And Your Honor made a comment about, you know, I know if it's 3 ounces, 5 ounces. I think that's a question of fact. Well, within range. I mean, I guess I'm having trouble. I know there's an allegation. If we had peeked inside the box, had been able to peek inside the box. I understand, it's an opaque box, you couldn't do it. We wouldn't have paid the $9.99 we paid for this box of candy. Is that enough? Yes. To satisfy the misleading requirement? The CFR regulation has been around for 25 years. Consumers have been taught, and their experience is, that when they purchase things, they're going to be full, but for reasonable reasons. How full is full? You have all these rulers in the pictures. Well, it's whether it's the empty space, whether it's for a functional use, such as you don't So, one inch down is okay. Two inches down out of a four inch box is not okay? How full does it have to be? The question is, it's fact specific to the product, and it's a question of what's the reason for that space? Is it because there's going to be settling, or is it because you don't want the goods to be damaged in transportation? So, there's no hard and fast rule about how much space there should be. It's a question of whether it's functional space or non-functional space. Your Honor, let me get back to your So, your theory is that there's zero tolerance under the regulation for non-functional slack fill. That anybody who has even as much as 1% non-functional slack fill has violated the regulation, and therefore can be sued under the Illinois Consumer Protection Statute either for deceptive or unfair practices. No, that's not our theory. We're not saying it had to be full to the brim. What we're saying is the amount that's here was not sufficient for But what's the rule that you want? I mean, I'm saying we go through all of these requirements, one through six, that are the functional ones. So, those are reasons why you can have something filled less than capacity. Now you have a box, and in your opinion, there's no tolerance for any non-functional slack fill. No, we're not saying that. We point out to I mean, 5%? 10%? What's the rule? There is no rule, but that's what trials are for. The trial would be what was the necessary amount of slack fill that should have been in this product that would be reasonable, that would not mislead a consumer, and that would be sufficient so that it didn't get damaged in transportation or any of the other six How would they actually mislead? They thought they were buying a seven ounce quantity of candy. Never mind the weight of the box, we'll just assume that. The standard is a reasonable person. What would a reasonable person have thought? Right, and a reasonable person buys the seven ounce box of mint meltaways. What is misleading? So, there's two pieces of information the consumer has. They see the weight. They also see the container. And as a reasonable person, I personally, over the years, I bought hundreds of chocolate bars. As I stand here today, I can't tell you whether they're one ounce, two ounce, or three ounces. So, you're thinking that if inside this box had been seven ounces, but they'd all been meringues, which have lots of air in them, the box would be entirely full because they're meringue. Still seven ounces. No claim there. If it were up to the brim is what your Honor is asking? Yeah, you know what a meringue is. You don't know what a meringue is. I stick to chocolate. I think three musketeers. A little less dense. We're on familiar territory. But I was just thinking, there are kinds of things. There are marshmallows that have a huge amount of air in them. So, you could have seven ounces of candy that fills up the whole box, or seven ounces of candy that's sort of more like, you know, whatever this was. Five-eighths of the box or so. Then you change the container. But if I could... Go ahead. If I could, speaking of three musketeers, there's a giant three musketeer, there's a regular three musketeer, and there's a mini three musketeer. People don't say, get me the one ounce three musketeer. They don't say, get me the five ounce musketeer. They don't say, get me the seven ounce. I don't know what the weights are. They say, I'd like the little guy, the medium, or the large. And we're conditioned to do that as consumers, because thanks to CFR 21-100, we know that the packaging can't be deceptive. So that when I get the large three musketeers, it's full. There's no slack fill in there that I say, jeez, I open it, I say, jeez, this is a lot smaller than I thought it was. And that's... And what I'm talking about are questions, we believe, for a jury to decide. For a jury to decide what was deceptive. So let me go back to the question of damages. I have similar concerns about this, given your clients pay money over, they get seven ounces of chocolate back from this package. In your, I think, the operative version of the complaint, you say that Ms. Benson was injured in the amount of the percentage of the purchase price equal to the percentage of non-functional slack fill in the product. Is that right? We do allege that, yes. Okay. Is that the theory? That if, let's say, half of the slack fill was non-functional, that would be what, 17, 16, 17, 18 percent, somewhere in there? And that you think the damages would then be 17 or 18 percent of the purchase price? Well, that's one way to look at it. And the other way is that under an Illinois consumer fraud case, unjust enrichment flows as a remedy. And that was, we brought that out in the Van Zandt case that was issued two weeks ago. And that was... And you got seven ounces of chocolate for $9.99. So you're actually arguing for a windfall. We're not, Your Honor. And as I said, there's an allegation that we would not have made the purchase had we known. Well, then that's not a percentage theory. That's a full $9.99. Well, unjust enrichment is a remedy that can be tailored by the trial court. And one of the ways that it can be calculated is we're not looking for a windfall. We're not looking for $10 back. But one of the ways you can calculate unjust enrichment is you look at what was the benefit to the defendant that induced somebody to buy a box that didn't contain all the chocolate they thought it would. So, under that theory, it's a well-established unjust enrichment calculation. You look at the benefit to the defendant. What was their profit on selling this? We are absolutely not looking for our money back. It's a rebuttal argument, you know. Oh, I'm sorry. Don't be sorry. I'll reserve for... Just quit. All right. I'll reserve for rebuttal. Thank you. All right. Up to you. Mr. Forkner. Thank you, Your Honors, and good morning. On behalf of Fannie Mae, the appellee, may it please the Court. I'd like to start where the argument just left off, and that is with the damages questions. It is undisputed in this case that plaintiffs did not allege the candy was defective, worth less than $9.99, that they could have obtained... She does say it's worth less than $9.99. No, the actual 7 ounces of candy she never alleges is worth less than $9.99. She indicates that on a subjective basis... She paid $9.99 for the product on the reasonable assumption the box was filled to functional capacity. She was injured in the amount of the percentage of purchase price equal to the percentage of nonfunctional slack fill. What more does she need to do? So it's like this, Your Honor. Imagine, and this candy's good, so I'll use this analogy. If I had a one ounce of gold and I charged you... Everybody buys gold by the weight. Nobody buys chocolate by the weight. We could make it a widget of a certain value that sells in the marketplace for $1,500, and I box it in two different size boxes, one big, one sized, for the widget. If the consumer who opens the bigger box thought the widget was worth going to be more, that's not the test under the Seventh Circuit of Illinois law. The question is, what was the value of the widget? And we know the value in the widget was the $1,500. No, we don't actually know that. Why do you think the FDA has adopted this regulation? So the FDA was trying to reconcile two congressional pronouncements, 21 U.S.C. 343D. Why do you think Congress gave those instructions to the FDA to protect consumers from deceptive packaging? Well, from a regulatory perspective, absolutely. But what plaintiff has to do here is they have to translate a regulatory into a state law claim, and that's where it fails. Why do you think these regulations are in place? I think that Congress enacted regulations because at the time there was a study done by the FDA indicating that there was various forms of excess packaging, including underfilling, including slack fill, and they created an omnibus solution, I believe in 1943 or 1960, something like that, to address these issues and then left to the FDA to define it. The FDA then analyzed various slack fill assumptions and determined that it wasn't based on amount, and the FDA recognized that there could be large amounts of functional slack fill. So the examples given in the Federal Register are 63% for a candy bar, 43.3% for cereal, and they said we cannot create a numerical test. To Judge Wood's comment, it's not a one-inch or three-inch or five-inch question. It goes to functionality. And so they then defined six functional slack fill justifications and then have interpreted those fairly broadly. But they don't apply here, though, right? No one is arguing that one of those slack fill justifications under subpart A justifies this package. My concern, just to cut to the quick from your position, is I don't see how anyone could ever bring a slack fill case as long as the box said, you know, there are seven ounces of chocolates or there are seven ounces of pens or there are seven ounces of whatever is in the box, and you could have a giant box with not very much in it, and people would think I've been misled. So I think it would take, consistent with the ALSEI court decision in the Southern District of New York cited in our brief, that it would be an exceptional case for it to survive a consumer protection statute, not that it wouldn't be enforceable by the FDA. You're essentially making an argument this is one of those things that only the government can enforce and the consumers are powerless to enforce. I'm not, Your Honor. Of course, some candies, that's what I was trying to say, some candies are bulky and light, you know, a meringue-based candy or a marshmallow-based candy or something like that, and some of them are very small and dense, so they're just different. But their argument is you should put the small and dense ones in a box that's appropriate to the size so people realize what they're getting. I mean, they don't take the box apart in the store. They're not even entitled to do that. Right, and in this particular case, and it's undisputed, or at least not alleged, they're actually photographs of the density of the chocolate right on the front that approximates the actual density and size of the chocolate. In this case, when you combine the picture that's at the top, the net weight that is undisputedly accurate, the piece count on the back that's indisputably accurate, and there's no question about that. As to the damages piece, Your Honor, plaintiffs concede in this case that the slack fill percentage did not affect price, that they're not asserting that they had a slack fill affecting price. So one could imagine a situation where a retailer jacks up the price based on the box, hoping to fool the consumer into believing that there's more there. That's not the case here. We have accurate disclosures all across the board in this particular example. Yet and yet, we have plausible allegations of a violation of the regulation, a regulation that the FDA says if you're violating this, you're misleading consumers. Why isn't that a plausible inference in civil litigation if the FDA thinks it's misleading? So I think in the first instance, the district court found the plaintiff had not satisfied the ICBAL standard. The district court said, and it was applying way too strict a standard under Rule 8 and Rule 9 in doing so. Well, I think that only Rule 9 applies in the first instance because of the Rule 8 waiver. Do you want to talk about Van Zandt? Yeah, sure, we can talk about Van Zandt. Let's stick with this point for right now, which is the plausibility of the inference that consumers have been misled by allegations that the packaging violates Section 100100. So the FDA actually offers somewhat inconsistent views on that. So when they were enacting the regulation, and we cite the Federal Register for this, they're talking about the market efficacy of this change, and the FDA acknowledges at that point that the packages already contain net weight statements, so it's not likely to have significant market influence. Separately then, these are ill-suited candidates for certain consumer protection laws. Illinois happens to be one with more stringent requirements. So you don't think the FDA's heart is in this regulation? Is that the argument? Well, I think the FDA was trying to, as stated in the Federal Register, they were trying to reconcile two seemingly inconsistent congressional pronouncements because the net weight statements alone, they set under 101.7H height requirements, boldface requirements, and all the other conspicuousness requirements to allow people to know the quantity of the packaging contained therein. They then had this other congressional pronouncement that said there's this slack fill issue. And so the FDA says we have to give slack fill meaning because otherwise we would read out 343D. So I think in part we have a Congress that has some inconsistencies. How that then translates into Illinois consumer fraud statute I think is a separate hurdle for the plaintiff, and we argue at length in all these various different disclosures. You argue, for example, that the totality of information may defeat a claim of deception, right? Yes. How is that a standard that can be applied on the pleadings? So it was applied in the pleadings in the Bobo v. GlaxoSmithKline case by the Seventh Circuit? Not really my question. Well, I think there's several cases that we cite in our brief for the proposition that if it's facially not deceptive given the context, that can be decided at the 12B6 stage. Why? I mean, it's a good question, though. Why you think that's a question that the judge should decide as opposed to a jury looking at all of those things that you've mentioned and saying, you know, a rational person wouldn't be deceived by this particular box. I mean, I was also worried about your position on the Rule 8, Rule 9B materials up to the point of causation and damages because it seems to me we are still under a notice-pleading regime post-Tawambli Iqbal. We find out exactly what these people are complaining about, what they spent, the who, what, when, where, why, how, you know, all of those questions are in there. It's just as a matter of law, if all the rest of this stuff is disclosed, can you show under Illinois law that there was either, you know, a deceptive practice or there was, you know, an unfair practice? So I think it starts at the 12B6 stage at the Iqbal question of plausibility. If one is a lessening deception and the law requires to look at the entire context. Right, and the deception, you have your 9B requirements, and they said, we pleaded, all of that stuff, and they keep pointing to this 14-ounce box as their evidence that it would be possible to have a non-misleading packaging because the 14-ounce box is different. Wouldn't you want some discovery on that? What kind of machine? They're not supposed to go sneak into the Fannie Mae plants and look at the machines that are doing the packaging. Well, I think in the first instance there's two flaws that the district court in our opinion correctly recognized as to their Iqbal pleading the FDCA violation. In the first instance, slack fill is expected to vary amongst product lines and across products. Even plaintiffs admit that slack fill varies. So one has to account for the slack fill variation beyond just simply taking a ruler to one box and a ruler to the other and inferring, therefore, that you have a violation. Separately, if you are going to do a comparative analysis between two… How much do you have to plead of that, though, versus exploring it in discovery? So I think you have to plead enough to get past the possibility and not merely be consistent with liability, which is the Iqbal standard. So if slack fill is expected, you have to plead more. Here they would have to do some analysis. There was no analysis of anything about, not even on information and belief, which would have been the place for them to go had they needed to have additional facts, and then they would have had to plead the basis for their information and belief. That's entirely absent. They don't go there at all. They simply say, here are two boxes, two different sized, and therefore infer four of the six standards for functional slack fill. That is insufficient. Then they go on to go into the state law claims and ask this court to ignore and have the consumers ignore clear disclosures of quantity, and not just one. We have the clear disclosure on quantity of the net weight. We have the numerical counts of the candy pieces themselves. We haven't talked about the receipt yet, where they specifically get the receipt that says seven ounces of candy at $9.99. If we get past those issues, we get into damages at a minimum where plaintiffs have conceded it didn't affect price whatsoever. There's no allegations that there was any defect in the candy, any that they could have purchased it elsewhere, or any of the other elements that this court has addressed in both the Camasta decision and the Kim v. Carter decision. Those are similar insofar as, take Camasta, you have a person buying two shirts and getting four for a total of six shirts. They think they're getting a deal. They think they're getting more bang for their buck. This court said, no, what was the actual value of the shirts? And where plaintiff doesn't allege or challenge the actual value of those shirts, there's no damages. Kim v. Carter is very similar. You have— In both of those cases, the consumer could have in her hands and could see exactly what she was paying for, right? The consumer could see the shirts or could see the children's clothes, for sure, but they still thought they were getting— What concerns me, Mr. Fortner, is that, in essence, at least my understanding is that every detail of consumer packaging is very deliberate, right? Size, color, color of font, size of font, choice of font, what photos are used, shape of the box, everything, right? Depending on the manufacturer, presumably. There are companies that test all these different variations, right? Depending on the company, right. Right. So don't we have to assume that there was a pretty deliberate choice, or at least we can infer there was a deliberate choice to go with this pretty large amount of slack fill on these boxes? No, I don't think so because that presumes non-functionality. And we don't get to presume non-functionality to then defer intent when plaintiff hasn't adequately pled the non-functionality. Well, on that, I disagree with you. So let's assume we've got sufficient pleading of non-functionality. Why not infer deliberate deception and misleading of consumers? Well, I think it doesn't make much sense for the following reason, and I think the FDA supports this. And the FDA says if a consumer is unhappy with the level of slack fill in a box, they can avoid the box going forward. Now, that's a practical matter. The market can work that way, but we also have plenty of experience, for example, in trademark law, that with low-value consumer purchases, consumers just don't pay that much attention to all the detailed disclosures that are made or the slight differences in marks and so on. I think I'm making a slightly different point. From the manufacturer's perspective, which is where we were talking about inferring intent from, if the manufacturer is making their consumers unhappy when they open the box and they're now unhappy, they're losing future sales. They're using additional cardboard and resources and costs in the packaging. So I don't think we can necessarily infer intent on that. So that's a pretty good argument for saying we really don't need this regulation, right? Well, we certainly don't need plaintiffs enforcing it when there's no damages and no reliance. But your argument, it's throughout your brief, in essence, you don't like the regulation. And your market-based analysis there, that market forces will correct, argues pretty effectively that there's no need for this regulation, and yet we have it. Well, I certainly don't think I would like to take on whether or not the viability of the regulation here. For this purpose of this appeal, it's sufficient that plaintiffs have failed to state a claim or state damages or state that they can actually claim a deception. And then they've waived their other claims, et cetera, and we've got individual defenses on their state law claims. So I think the Court rightfully dismissed it, and I think if, Judge Hamilton, you believe it was not on a 9b standard, I think there's ample evidence in the record to dismiss it on the other basis. I see my time's up. All right, thank you very much. Mr. Bormas, any further? Thank you. I think under defendant's position, and I think the Court had hinted at this, there would never be a slack fill case. Under this Illinois statute, I mean, I presume the FDA could send people around, assuming they're enforcers, and require manufacturers to reveal how much empty space is in boxes. Correct, but that's not the playing field we have here today. And I think that the disclosure of weight does not trump the disclosure of a properly packaged food item. They're equal, and as the FDA has said, it's misleading, it's their words, to package goods with unnecessary slack fill. Okay, suppose you get to a jury on this. What do you ask the jury to award you? What we ask the jury to award us. So, again, we have a claim for unjust enrichment. Van Zandt says, okay. I'm looking for a straight answer. Picture us as jurors. I'll give you a very straight answer. We're going to ask the jury, as I stand here today, Your Honor, we're going to ask the jury to refund us the profit that the defendants enjoyed because we purchased a product under misleading circumstances, and that is a well-established theory of damages under unjust enrichment. And we would get into the discovery and we would find out what, because remember the allegation is I never would have purchased this had I known there was all this slack fill. Okay. If there are any other. Your time is up. Okay, thank you. Thank you very much. Thanks to both counsel. We'll take the case under advisement.